DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

SIRARTHUR STEFON DANIELS,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D22-3296

_____

December 29, 2023

Appeal from the Circuit Court for Pinellas County; Philippe Matthey,
Judge.

Howard L. Dimmig, II, Public Defender, and Dane K. Chase, Special
Assistant Public Defender, Bartow, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Cerese Crawford
Taylor, Assistant Attorney General, Tampa, for Appellee.

CASANUEVA, Judge.

Sirarthur Stefon Daniels challenges his conviction for aggravated
battery and his resulting ten-year prison sentence. He argues that
providing the jury with the forcible-felony exception to the justifiable use
of nondeadly force instruction was improper and resulted in fundamental

error.  We agree.  Therefore, we reverse Daniels' conviction and sentence and remand for a new trial.

## I.  Factual Background

Daniels was charged with aggravated battery after a physical altercation occurred between him and Ms. Mitchell—the two were in a relationship and had been living together.  The incident was witnessed by Bridget Riesenbeck.  Unsurprisingly, the testimony from Mitchell and Daniels differed on critical details concerning the order of events.  Riesenbeck's testimony, if believed, seemed to support Daniels' story.

Mitchell testified that on the night of the incident, Daniels arrived home early in the morning with another woman, Riesenbeck.  Mitchell refused to allow Riesenbeck to enter, so Daniels pushed her out of the way with his body and she pushed him back.  The two were arguing when Daniels "socked" her.  The two exchanged hits until Daniels knocked her to the ground.  She got up, told them both to leave, and went into another room to call her children.  Daniels—believing Mitchell had called the police—began hitting her again.  He punched her in the eye, grabbed her by her hair, and dragged her into the living room where he continued to kick, punch, and bite her to the point of tearing skin.  Daniels then strangled her until she was unconscious.

Sometime after she regained consciousness, Riesenbeck approached her with a bowl of ice-water.  Daniels then attempted to drown Mitchell by holding her face in the bowl but was ultimately stopped by Riesenbeck.  She also claimed that Riesenbeck put items in front of the door to create a barricade and that Daniels threatened her with a firearm before hitting her in the head with it, causing her to lose consciousness again.  When she awoke for the second time, she was able to squeeze past the items blocking the door and escape to find help.  She

testified that after roughly two hours of abuse, she sustained several injuries including an orbital fracture, a torn away portion of her upper lip, and an injury to her cervical spine.

Daniels testified that when he arrived at the apartment, Mitchell was angry at him for coming home late with Riesenbeck. The three of them were still outside the apartment when Mitchell began yelling and hitting Daniels. Daniels pushed her into the apartment where Mitchell continued to slap him. He admitted that he slapped her back but claimed that they had stopped fighting for a period of time until Mitchell attacked Riesenbeck. At that point, Daniels and Mitchell began "tussling" again. Mitchell was on top of him punching his chest, face, and head. He could not get out from under her, so he began biting her. She eventually got off and ran to the bathroom. After coming out of the bathroom, Mitchell began throwing punches again and Daniels returned the punches. During this fight, Mitchell slipped and hit her face on the tile floor and started to bleed. He sat down, and Riesenbeck grabbed a bowl of ice-water for Mitchell's mouth. Mitchell eventually left. Daniels denied ever holding her face in the water, striking her with a firearm, or preventing her from leaving.

Riesenbeck testified that when she and Daniels arrived at the apartment, Mitchell began yelling at him for coming home late, pulled on him, and smacked him. Riesenbeck suggested they "just give her the money" and go.[1] Riesenbeck entered the apartment first with Daniels and Mitchell following behind, still arguing. Daniels stopped by the

---

[1] Riesenbeck claimed that she and Daniels were at Mitchell's apartment to drop off money.

bathroom first and then took off his backpack to get the money.[2] She testified that it was Mitchell who began barricading the door while Daniels was in the bathroom. And upon exiting the bathroom, Mitchell and Daniels continued to bicker, and Mitchell continued to slap Daniels. According to Riesenbeck, Daniels did not hit Mitchell first, but Mitchell started to choke, bite, and hit Daniels. At one point Mitchell tried to attack her, but Daniels grabbed Mitchell and the two ended up on a mattress on the floor of the living room. Mitchell was on top of Daniels, and they were both "striking each other, pulling hair, [and] choking each other." When the fighting stopped, Riesenbeck noticed the blood on Mitchell and offered a bowl of ice-water for her to soak her face in. Mitchell eventually went to the bedroom and later came out with a backpack, calmly moved the pieces blocking the door, and "walked right out." Riesenbeck testified that nobody held Mitchell's head in the water and that there was never a firearm.

Mr. Daniels' primary defense was that he was acting in self-defense. The trial judge read the jury instructions for the justifiable use of nondeadly force, but also included the following instruction: "[T]he use of non-deadly force is not justified if you find that [Mr. Daniels] was attempting to commit, committing, or escaping after the commission of an Aggravated Battery."

## II. Discussion

The Florida Supreme Court explained that the forcible-felony exception to a claim of self-defense applies only when there is a forcible

---

[2] Riesenbeck's testimony is confusing at this point because she also claims that Daniels and Mitchell were fighting as they entered the doorway, but Mitchell tripped over Daniels as he was trying to get into the backpack and Mitchell "slid down the wall."

felony independent of the one which the defendant claims he or she committed in self-defense.  *Martinez v. State*, 981 So. 2d 449, 454 (Fla. 2008); *see also Santiago v. State*, 88 So. 3d 1020, 1022 (Fla. 2d DCA 2012) ("[T]he [forcible-felony] exception applies only when 'the accused is charged with at least two criminal acts, the act for which the accused is claiming self-defense and a separate forcible felony.' " (quoting *Giles v. State,* 831 So. 2d 1263, 1265 (Fla. 4th DCA 2002))).  Here, Daniels was charged only with aggravated battery—the act he claims he committed in self-defense.  Therefore, the court erred when it read the forcible-felony exception instruction to the jury.  Because the error was not raised before the trial court, however, the error must be fundamental to warrant reversal.

The State argues that we cannot consider Daniels' fundamental error argument because the issue was waived when counsel affirmatively agreed to the instruction, thus inviting the error.  The State correctly asserts that a fundamental error argument is waived where counsel affirmatively agrees to an improper instruction.  *See York v. State,* 932 So. 2d 413, 416 n.2 (Fla. 2d DCA 2006) ("An exception from the doctrine of fundamental error applies in circumstances 'where defense counsel affirmatively agreed to or requested' an erroneous instruction." (quoting *State v. Lucas,* 645 So. 2d 425, 427 (Fla. 1994))).  However, the Florida Supreme Court has opined that the exception from the doctrine of fundamental error does not apply where counsel has merely acquiesced to the instructions.  *See Lowe v. State,* 259 So. 3d 23, 50 (Fla. 2018).

We first note that in this context, what constitutes mere acquiescence versus an affirmative agreement has not been fully defined

by case law.[3]  Instead, the determination is akin to the approach taken by Justice Potter Stewart.[4]  We begin our review by looking to the charge conference, where the following conversation occurred:

> THE COURT: Now, the next one is however the use of nondeadly force would not be justified if you find that the defendant was attempting to commit, committing, or escaping after the commission of -- and I think here we would have to put aggravated battery.  If the jury finds that he was committing aggravated battery, it negates self-defense.
>
> DEFENSE: Yeah.  Yes, Your Honor.
>
> THE COURT: I mean, that's the allegation.
>
> THE STATE: Yes.

---

[3] The Florida Supreme Court provided that an affirmative agreement

> requires more than "mere acquiescence" to an incorrect jury instruction to support the conclusion that the defendant invited the error and thereby is precluded from challenging the error on appeal, even under a fundamental-error standard.  More specifically, to support a finding of invited error, defense counsel must either request the incorrect instruction or be aware an instruction is incorrect but agree to it anyway . . . .

*Allen v. State*, 322 So. 3d 589, 598 (Fla. 2021) (citing *Lowe*, 259 So. 3d at 50); *see also Baptiste v. State*, 324 So. 3d 453, 455 (Fla. 2021).  Clearly, requesting an erroneous instruction or knowing the instruction is erroneous but failing to object constitutes an affirmative agreement.  *See Phillips v. State*, 268 So. 3d 830, 831 (Fla. 2d DCA 2019) ("[F]undamental error is waived where defense counsel requests an erroneous instruction." (quoting *Universal Ins. Co. of N. Am. v. Warfel*, 82 So. 3d 47, 65 (Fla. 2012))).  But here, there is no suggestion that counsel requested the instruction or was aware the instruction was incorrect but agreed anyway.  Thus, we cannot conclude that counsel affirmatively agreed based on this language.

[4] In *Jacobellis v. Ohio,* 378 U.S. 184, 197 (1964) (Stewart, J., concurring), Justice Stewart famously wrote in a concurring opinion discussing pornography that, "I know it when I see it."

6

> THE COURT: Is that this occurred as he committed an aggravated battery. And of course, the jury could believe otherwise. But defense, any argument against that?
>
> DEFENSE: No, Your Honor.

The court inquired again before the instructions were read to the jury:

> THE COURT: Everyone look through the jury instructions?
>
> DEFENSE: Yes, Your Honor.
>
> THE COURT: They look good for the State?
>
> THE STATE: Yes.
>
> THE COURT: Okay. From the defense?
>
> DEFENSE: Yes, sir.
>
> DEFENSE: Yes, Your Honor.

The court asked a third time after the instructions were read and after the jury had been dismissed if there were any objections to the instructions as they were read. Counsel responded, "No." Although the court asked counsel several times about the jury instructions, in our view, the responses "Yes, your honor," and "No, Your Honor," without much more, fall into the category of mere acquiescence. Therefore, we may review for fundamental error.

On the merits, the reading of an erroneous instruction on an affirmative defense does not always constitute fundamental error. *Routenberg v. State*, 301 So. 3d 325, 328-29 (Fla. 2d DCA 2020) (quoting *Martinez*, 981 So. 2d at 455). When determining whether a mistaken instruction constitutes fundamental error, "we 'must consider "the effect of the erroneous instruction in the context of the other instructions given, the evidence adduced in the case, and the arguments and trial strategies of counsel." ' " *Id.* (quoting *Dooley v. State*, 206 So. 3d 87, 89 (Fla. 2d DCA 2016)). Further, "[w]here self-defense is 'the defendant's

7

primary defense . . . the evidence [cannot] be viewed as "extremely weak." ' " *Peruchi v. State*, 317 So. 3d 1262, 1266 (Fla. 2d DCA 2021) (second alternation in original) (quoting *Crimins v. State*, 113 So. 3d 945, 948 (Fla. 5th DCA 2013)).

### III. Conclusion

After a comprehensive review of the record, it is clear that self-defense was Daniels' primary defense. And even if the defense is not particularly strong, it is not "extremely weak" such that it "strain[s] even the most remote bounds of credulity." *Martinez*, 981 So. 2d at 456. The instruction on the forcible-felony exception removed Daniels' main defense from the consideration of the jury, without which a jury could have determined that the State failed to meet its burden that his use of nondeadly force was not justified. We reverse and remand for a new trial.

Reversed and remanded.


VILLANTI and LUCAS, JJ., Concur.

_____

Opinion subject to revision prior to official publication.